IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY GRAVES,<br><br>    Plaintiff,<br><br>  vs.<br><br>JO ANNE BARNART,<br>Commissioner of Social Security,<br><br>    Defendant.<br>_____/ | CASE NO. CV-F-05-0093 AWI LJO<br><br>**FINDINGS AND RECOMMENDATIONS RE MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION** (Doc. 14) |

Plaintiff Bobby Graves ("claimant") seeks judicial review of an administrative decision denying his claim for Supplemental Security Income under the Social Security Act ("Act"). Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner").

Claimant filed his complaint on January 14, 2005 and his opening brief on September 26, 2005. The Commissioner filed her opposition to the appeal on October 25, 2005. Claimant filed a reply brief on November 10, 2005.

### BACKGROUND

#### Administrative Proceedings

Claimant filed an application for supplemental security income under the Social Security Act on August 22, 2002, alleging a disability onset of August 21, 2000 due to back problems. (Administrative Record ("AR") 91-93, 104.) The application was denied initially and upon reconsideration. (AR 68-72, 75-78.) Claimant's application was further denied by an Administrative Law Judge ("ALJ") in a

decision issued on September 11, 2003. (AR 20-32.) The Appeals Council denied review. (AR 7-9.) Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

## Claimant's Background

Claimant was born on October 26, 1951. Claimant has completed the eleventh grade. (AR 55.)

## Medical History

The ALJ admitted into evidence claimant's submitted medical records.

A form completed by physician's assistant Dan Cox, PAC, the Stanislaus County Department of Social Services indicated that on or before, April 20, 1998, claimant's diagnoses included chronic low back pain; spondylolisthiasis at L5/S1;3 bilateral facet arthritis; spinal fusion at L3/4; and fibromyalgia (AR 154.)

On August 27, 1999, claimant presented to the emergency room after having fallen and injuring his head. (AR 175.) He reported having been drinking alcohol. He did not complain of pain to the cervical, thoracic or lumbar area with palpation. (AR 175.)

Claimant presented for a consultative evaluation with internist James Martin, M.D., on November 16, 2000. (AR 178-181.) Claimant reported that he is unable to work due to back pain and depression. On examination, claimant had normal range of motion for the cervical spine and dorsolumbar spine. No paraspinous spasms. Claimant had full range of motion of the shoulder, elbow, hips, knee, writs, and hands. (AR 180.) Dr. Martin assessed alcohol abuse with possible peripheral neuropathy, hepatitis C, seropositivity without obvious functional sequelae, chronic back pain with possible radiculopathy and psychological problems. (AR 180.) Dr. Martin opined that claimant's overwhelming primary functional impairment is related to his ongoing substance abuse. (AR 180.) Dr. Martin stated that he could not assess any true functional impairment for his back because of claimant's "questionable reliability." (AR 181.) Dr. Martin opined that to be prudent, he would restrict claimant from heavy and very heavy lifting. (AR 181.)

A psychological assessment was performed by Jennifer Kirkland, Ph.D. on November 16, 2000. (AR 182-184.) Claimant reported problems walking, focusing, concentrating, reading and writing. Dr. Kirkland administered a complete psychosocial evaluation including testing. (AR 183.) Dr. Kirkland reported that claimant's overall IQ was in the extremely low range; verbal memory was in the impaired

range and visual memory was higher but still impaired. (AR 183.) Dr. Kirkland assessed claimant as able to understand, carry out and remember simple, one-step tasks. (AR 184.) He could interact with others in a work like setting, but would have difficulty maintaining a work routine. (AR 184.) Claimant's verbal IQ was 63, performance IQ was 64 and full scale IQ 61. (AR 185.)

State agency psychiatrist L. Gottschalk, M.D., reviewed the evidence, including Dr. Kirkland's report on December 8, 2000. (AR 186, 199, 229). Dr. Gottschalk assessed organic mental disorder, affective disorder, personality disorder, substance addiction disorder, but that none of the disorders met or equaled the Listings. (AR 186.) Dr. Gottschalk opined that the psychological tests Dr. Kirkland had administered were invalid, citing poor credibility, inconsistencies, poor concentration and effort. (AR 199). Dr. Gottschalk assessed claimant as mentally able to carry out some moderately complex instructions, respond appropriately to supervision/coworkers/the public and adapt reasonably to changes in work routine, although it should be with reduced contact with the public. (AR 202.)

On February 20, 2001, claimant was seen at Stanislaus Health Services for back pain and a growth in his mouth. (AR 205.)

On March 20, 2001, state agency physician Mario Marando, M.D., reviewed the evidence and assessed claimant with organic mental disorder and affective disorder but which did not meet or equal the Listings. (AR 207.) Dr. Marando functionally assessed claimant as appearing to be "capable of performing sustained work related activities." (AR 223.)

On July 20, 2001, Dan Cox, PAC of the Stanislaus Department of Social Services completed a Social Security medical report indicating that claimant has chronic low back pain, due to vascual sclerosis, degenerative disc of L5-S1, first degree spondylolisthesis of L5. (AR 243.) Mr. Cox opined that claimant could lift and carry 10 pounds frequently and 20 pounds occasionally and sit/stand/walk 2 hours in an eight hour workday. (AR 244-245.)

A radiological report of claimant's lumbar spine on September 4, 2001 revealed spondylolisthesis of L5 on S1, bilateral posterolateral soft tissue fullness at the level of L5-S1 compatible with disc herniation, severe narrowing of the neural foramina and compromise of bilateral exiting nerve roots; bilateral facet arthritis at multiple levels. (AR 250.)

A neurological examination on May 10, 2001 by Dikran Bairamian, M.D., revealed low back was

1  nontender, hip rotation was negative and straight leg raising was unlimited.  (AR 253.)  Dr. Bairamian
2  commented that low back pain would be managed with conservative care, rest, anti-inflammatories and
3  physical therapy.  (AR 254.)  In a follow up on June 19, 2001, Dr. Bairamian recommended conservative
4  care for back pain.  (AR 252.)

5  Claimant was seen at Stanislaus Health Services for back pain in 2001 through 2002.  An X-ray
6  of the lumbar spine on February 20, 2001 revealed vacular sclerosis, degenerative disc of L5-S1 and first
7  degree spondylolisthesis of L5 or S1.  (AR 322.)  A follow up treatment note on December 17, 2002,
8  by Dr. Bairamian reported that claimant continued to complain of back pain, and that the low back was
9  tender to palpation.  (AR 311.)

10  On December 30, 2002, claimant presented for a comprehensive neurologic evaluation by Erik
11  Roberson, M.D.  (AR 327-334.)  On examination, coordination/station/gait was normal, no assistive
12  devices were used, positive straight leg raising on the right and negative sitting straight leg raising, no
13  spasms or back tenderness.  (AR 329-330.)  Bulk and tone were normal in all four extremities.  (AR
14  330.)  Dr. Roberson diagnosed low back pain and peripheral neuropathy.  (AR 330.)  He opined that
15  there is little objective evidence of limiting deficits and that while claimant has findings for peripheral
16  neuropathy, it is not symptomatic for the basis of his complaints.  (AR 330.)  Dr. Roberson opined that
17  claimant could be expected to stand about six hours in an eight hour day and sit without restrictions; lift
18  and carry 50 pounds occasionally and 25 pound frequently; postural limitations on bending and stooping
19  frequently.  (AR 330.)

20  Mr. Cox/John Castro, M.D. submitted a medical assessment form dated March 24, 2003.  (AR
21  336.)  They opined that claimant could lift and carry 20 pounds occasionally and 10 pounds frequently.
22  (AR 337.)  Claimant would be able to sit 3-4 hours, stand/walk 2-3 hours in and 8 hour workday.  (AR
23  338.)  Claimant would need to lie/elevate 2-3 hours in an eight hour workday.

### Hearing Testimony

25  Claimant testified that he was in special education classes in school, cannot read a newspaper,
26  or make change.  (AR 56.)  Claimant said that he has back pain.  (AR 56.)  He is able to dress and bathe
27  himself without help.  (AR 57.)  He spends his time by sitting at the bus station.  (AR 57.)  He testified
28  that drugs and alcohol have been problems in his life.  (AR 42.)  He has been clean since 2000. (AR 58.)

He has trouble sleeping. (AR 59.) He takes Tylenol 3 with no side affects. (AR 60.) He can walk about a block. (AR 60.) He does not have problems sitting for 25-30 minutes, can lift 5 pounds occasionally. (AR 61.) He has stabbing pain in his lower back. (AR 61.) He has pain all of the time. (AR 61.) He has pain in his hands from carpal tunnel. (AR 61.) He wears a brace at night. (AR 62.) He wakes in the night from his back hurting. (AR 62.)

A Vocational Expert ("VE") David Dettmer testified. Given a hypothetical where a person is 51 years old, who can lift and carry 50 pounds occasionally and frequently 20 pounds, can sit, walk, or stand six hours in an eight hour day, and is able to remember, understand, and carry out simple job instructions, the VE testified that the person could perform medium and light work. (AR 63.) The person can perform as an automobile detailer, laundry worker and production helper. (AR 64.)

## ALJ Findings

In her September 11, 2003 decision, the ALJ characterized the "primary issue" before her as whether claimant was disabled. (AR 21.) In determining claimant was not disabled and not eligible for disability benefits, the ALJ made the following findings (AR 30-31):

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.
2. The claimant has an impairment or a combination of impairments considered "severe" based on the requirements in the Regulations 20 CFR §416.920(b).
3. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.
4. The ALJ finds the Claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.
5. The ALJ carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairments. 20 CFR §416.927.
6. The claimant has the residual functional capacity to perform a wide range of medium work.
7. The claimant has no past relevant work. 20 CFR §416.965.
8. The claimant is closely approaching advanced age. 20 CFR §416.963.

| | | |
|---|---|---|
| 1 | 9. | The claimant has a limited education. 20 CFR §416.964. |
| 2 | 10. | The claimant has no transferable skills from any past relevant work. 20 CFR §416.968. |
| 3 | 11. | Based upon the claimant's residual functional capacity for medium work which is substantially intact and has not been compromised by any exertional, or non-exertional limitations (except for frequent bending and stooping and balancing), there are jobs existing in significant numbers in the national and regional economies that he can perform. This finding is based upon using Medical-Vocational Rule 203.18, Table No. 2, Appendix 2, Subpart P, Regulation No. 4, as a framework for decision making and the unbiased testimony of the Vocational Expert. There are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as an automobile detailer, laundry worker, and production helper. |
| 12 | 12. | The claimant was not under a "disability," as defied in the Social Security Act, at any time through the date of this decision. 20 CFR §416.920(f). |

## DISCUSSION

### Standard of Review

Congress has provided a limited scope of judicial review of a Commissioner's decision. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Sanchez v. Secretary of Health & Human Services*, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). Substantial evidence is "more than a mere scintilla" (*Richardson v. Perales*, 402 U.S. 389, 402 (1971)), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

The record as a whole must be considered, weighing both the evidence that supports and detracts from the Commissioner's conclusion. *Jones,* 760 F.2d at 995. If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d

1226, 1229-1230 (9th Cir. 1987).

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

Claimant contends the ALJ erred by not properly reviewing (1) the mental evidence at Step 3, (2) the substantial evidence in the record, (3) the testimony, and (4) the treating doctor's opinion.

## The Sequential Analysis

To qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(a)(3)(A).

To achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation to determine whether a claimant is physically or mentally disabled. 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f). If during any point of this review, it is determined that the claimant is not disabled, the claim is not to be considered further. 20 C.F.R. §§ 404.1520(a) and 416.920(a). The five-step process is summarized as follows:

1.  Determination of whether the claimant is engaged in substantial gainful activity, and if so engaged, the claimant is not presumed disabled and the analysis ends;

2.  If not engaged in substantial gainful activity, determination of whether the claimant has a severe impairment; if the claimant does not, the claimant is not presumed disabled and the analysis ends;

3.  If the claimant has a severe impairment, determination of whether any such severe impairment meets any of the impairments listed in the regulations;[1] if the claimant does have such an impairment, the claimant is disabled and the analysis ends;[2]

4.  If the claimant's impairment is not listed, determination of whether the impairment

---

[1] *See* 20 C.F.R. Part 404, Subpt. P, App. 1.

[2] If a claimant is found to have an impairment which meets or equals one of the listed impairments, a conclusive presumption of disability applies and the claimant is entitled to benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 174 (9th Cir. 1990) (citing *Williams v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *Key v. Heckler*, 754 F.2d 1545, 1548) (9th Cir. 1985.

prevents the claimant from performing his or her past work;[3] if the impairment does not, the claimant is not presumed disabled and the analysis ends; and

5. If the impairment prevents the claimant from performing his or her past work, determination of whether the claimant can engage in other types of substantial gainful work that exist in the national economy;[4] if the claimant can, the claimant is not disabled and the analysis ends.

The claimant has the initial burden of proving the existence of a disability within the meaning of the Act. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). The claimant establishes a prima facie case of disability by showing that a physical or mental impairment prevents him from engaging in his previous occupation. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f).

At step one, the ALJ found that claimant had not engaged in substantial gainful work. (AR 21.) At step two of the sequential analysis, the ALJ found that claimant has severe impairment of degenerative disc disease, depression, borderline intellectual functioning, and alcoholism. (AR 22.)

## Mental Impairment - Step 3

Claimant argues that at Step 3, the ALJ did not review Listings 12.02 or 12.05 for the mental impairment.

The third step of the sequential evaluation is to determine whether a disability claimant has any impairment which meets or equals an impairment described in the Listings of Impairments ("listings").[5] 20 C.F.R. Part 404, subpart P, Appx 1. At Step 3 of the sequential analysis, the claimant bears the burden of proving that he or she has an impairment that meets or equals the criteria of an impairment

---

[3] At this stage of the analysis, the ALJ should consider the demands of the claimant's past work as compared with his or her present capacity. *Villa v. Heckler,* 797 F.2d 794, 797 (9th Cir. 1986) (citations omitted); 20 C.F.R. § 416.945(a).

[4] At this stage of the analysis, the ALJ should consider the claimant's residual functional capacity and vocational factors such as age, education and past work experience. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

[5] The purpose of the Listings is to describe impairments "severe enough to prevent a person from doing any gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532, 110 S.Ct. 885 (quoting Social Security Ruling (SSR) 83-19, Dept. of Health and Human Services Rulings 90 (Jan. 1983)). If a claimant meets or equals a listed impairment, he/she is disabled. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).

listed in Appendix 1 of the Commissioner's regulations. *Dudley v. Secretary of Health and Human Services*, 816 F.2d 792, 793 (1st Cir.1987). If the claimant meets this burden, the Commissioner is required to find the claimant disabled, and need go no further in the evaluation process. *Id.*; See 20 C.F.R. 404.1520(d).

A claimant's impairment is not considered to be one in the Listing of Impairments merely because it has the diagnosis of a listed impairment; it must also have the findings shown in the listed impairment. 20 C.F.R. §§404.1525(d), 416.925(d). A claimant's impairments meet a listed impairment only if the claimant's impairments manifest the specific findings described in the set of medical criteria for the listed impairment. *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885 (1990).

Section 12.02 of the Listing addresses psychological or behavioral abnormalities associated with a dysfunction of the brain.[6] Section 12.05(b) addresses mental retardation and requires a valid verbal, performance, or full scale IQ of 59 or less. Section 12.05( c) also addresses mental retardation and requires a valid verbal, performance, or full scale IQ of 60-70 and physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 CFR Pt 404 Subpart P, App. 1, sec. 12.05.

---

[6] The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
   A. Demonstration of a loss of specific cognitive abilities or affective changes and the medically documented persistence of at least one of the following 1. Disorientation to time and place; or 2. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or 3. Perceptual or thinking disturbances (e.g., hallucinations, delusions); or 4. Change in personality; or 5. Disturbance in mood; or 6. Emotional lability (e.g., explosive temper outbursts, sudden crying, etc.) and impairment in impulse control; or 7. Loss of measured intellectual ability of at least 15 I.Q. points from premorbid levels or overall impairment index clearly within the severely impaired range on neuropsychological testing, e.g., the Luria-Nebraska, Halstead-Reitan, etc.;
AND
   B. Resulting in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration;
Or
   C. Medically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support and one of the following: 1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

The ALJ considered the requirement of Listing 12.02, and functionally assessed claimant with:

> "Mild restriction in activities of daily living, mild difficulties in social functioning, moderate deficiencies in concentration, persistence or pace and no episodes of decompensation. There is no medically documented history of an impairment of at least two years' duration that has caused more than a minimal limitation of ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following repeated episodes of decompensation, each of extended duration; a residual disease process tha [sic] has resulted in such marginal adjustment that even a minimal increasing mental demands or change in the environment would be predicated to cause the individual to decompensate; or a current history of one or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement." (AR 22.)

The ALJ noted that "[n]o medical expert has found that the claimant's impairments are equivalent in severity to any Listed impairment."

Here, the Record contains a consultative review by Dr. Gottschalk and a consultative examination by Dr. Kirkland. Claimant argues that Listing 12.05 met, and while claimant does not state <u>why</u> she contends the Listing is met, presumably it is because the tests administered by Dr. Kirkland resulted in claimant's verbal IQ was 63, performance IQ was 64 and full scale IQ 61. (AR 185.) Dr. Kirkland addressed the scores and opined that the tests results should be viewed with caution because the claimant was inconsistently persistent in testing. (AR 183.) Indeed, Dr. Kirkland assessed claimant as able to understand, carry out and remember simple, one-step tasks and interact with others in a work like setting, but would have difficulty maintaining a work routine. (AR 184.) State Agency physician Dr. Gottschalk reviewed the consulting examiner's report, and noted that psychological tests results were invalid. (AR 199.) Dr. Gottschalk opined that the psychological tests Dr. Kirkland had administered were invalid, citing poor credibility, inconsistencies, poor concentration and effort. (AR. 199). Dr. Gottschalk's conclusion was consistent with Dr. Kirkland's comment that Plaintiff's effort was inconsistent, and that test results should be interpreted cautiously. (AR 183). State agency medical consultants are highly qualified physicians who are experts in the evaluation of the medical issues in disability claims under the Act. *See* Social Security Ruling 96-6p. Thus, there is substantial evidence that the scores were not valid and thus claimant did not satisfy the Listing.

Claimant argues that he has a history of mental retardation, citing AR 101-103, 110, 115, 122,

134, 283. (Opening Brief p.4.) Claimant does not cite to any objective medical evidence of mental retardation. Listing 12.05 defines mental retardation as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." The records cited by claimant are not objective medical records.

## The ALJ's Finding of Residual Functional Capacity

The Commissioner has final responsibility to determine a claimant's residual functional capacity. 20 C.F.R. § 404.1546. "Residual functional capacity" is the phrase used by the Commissioner to denote a claimant's ability to perform work-related tasks despite his physical or mental impairments. 20 C.F.R. §§ 404.1545(a) and 416.945(a). Categories of residual functional capacity include sedentary, light, medium, heavy and very heavy work. 20 C.F.R. §§ 404.1567 and 416.967. In this case, the ALJ found claimant capable of performing medium work. Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 CFR §§404.1567( c) and 416.967( c). "Light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b) and 416.967(b).

Claimant argues that there is not substantial evidence to support the finding of residual functional capacity and that the ALJ erred in rejecting the treating "doctor's" opinions.

Generally, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). However, a treating physician's opinion is not conclusive as to a claimant's physical condition or the ultimate issue of disability and may be disregarded by the ALJ even where it is not contradicted. 20 C.F.R. § 404.1527(e); *Rodriquez v. Bowen*, 876 F.2d 759, 761-762, n. 7 (9th Cir. 1989); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (inconsistencies and

ambiguities in treating physician's opinion concerning level of disability sustained by social security claimant, were specific and legitimate reasons for not accepting physician's opinion.)

The Ninth Circuit Court of Appeals has established requirements when an ALJ disregards the treating physician's opinion:

> The ALJ may disregard the treating physician's opinion, but only by setting forth "specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). This burden can be met by providing a detailed summary of the facts and conflicting clinical evidence, along with a reasoned interpretation thereof. *Id.* Furthermore, the ALJ's reasons for rejecting the doctor's opinion must be "clear and convincing.

*Rodriquez,* 876 F.2d at 762.

The ALJ gave a detailed summary of the facts and conflicting clinical evidence. (AR 22-29.) The ALJ reviewed all of the objective medical evidence in the record, including the records from the emergency room of Emanuel Medical center, the records from Health Services Agency, records from Dr. Bairamian, and the consultative examinations by Dr. Martin and Dr. Roberson. The ALJ based the residual functional capacity on Dr. Roberson's opinions. (AR 26.) The opinion of a reviewing physician and the ALJ's conducting an independent analysis of the medical evidence may constitute substantial evidence. *Andersen v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995).

Claimant attacks the ALJ's reliance upon Dr. Roberson's opinion because Dr. Roberson did review the back radiographs. (Opening brief p.5.) Nonetheless, the ALJ reviewed and considered the radiographic evidence. (AR 25, 27.) Dr. Roberson conducted an independent neurological examination which concluded that claimant retained the functional capacity for work. *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (holding examining physician's opinion that claimant could lift and carry 20 to 50 pounds constituted "substantial evidence" in support of ALJ's finding that claimant could perform medium work, where examining physician's opinion was based on results of "his own independent examination")

Claimant attacks the ALJ for "misrepresenting the truth" regarding the carpal tunnel syndrome. The ALJ, however, considered at length the allegation of carpal tunnel and could find any objective clinical findings on the subject. (AR 28.) Indeed, the ALJ exhaustively analyzed the clinical evidence for a finding that claimant does not have carpal tunnel syndrome. (AR 28.) If there is conflicting

evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

Claimant contends that the ALJ wrongly rejected the treating doctor's opinion. The ALJ stated adequate reasons for rejecting the opinion of Mr. Cox. The ALJ noted that Mr. Cox was not an acceptable medical source. The Social Security Regulations list persons who qualify as "acceptable medical sources" and include persons with doctorate degrees or M.D. degrees. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (listing acceptable medical sources); *see Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir.) (noting that "[a]cceptable medical sources specifically include licensed physicians. . ."), *cert. denied*, 519 U.S. 881, 117 S.Ct. 209, 136 L.Ed.2d 144 (1996). Under the Social Security Regulations, Mr. Cox is not an "acceptable medical source." 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

The ALJ also noted that one of Mr. Cox's statements of opinions was also signed by John Castro, M.D. (AR 24.) The ALJ found that there was no evidence that Dr. Castro actually treated claimant:

> "Although Dr. Castro signed the form, the treatment records do not show that he ever treated the claimant." (AR 24.)

Under the Social Security regulations, a treating source is specifically defined as: "your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an <u>ongoing treatment</u> relationship with you." 20 C.F.R. §416.902 (emphasis added). An "ongoing relationship" means "you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)." *Id.* Thus, since there was no evidence of an ongoing relationship with Dr. Castro, the ALJ did not err.

Therefore, there is substantial evidence in the record to support the ALJ's finding of claimant's residual functional capacity. *See Allen v. Sec'y of Health & Human Servs.,* 726 F.2d 1470, 1473 (9th Cir.1984) ("It is the ALJ's role to resolve evidentiary conflicts. If there is more than one rational interpretation of the evidence, the ALJ's conclusion must be upheld.").

### Review of the Testimony

Claimant argues that the ALJ did not properly review his testimony.

A claimant's credibility generally becomes important at the stage where the ALJ is assessing

13

residual functional capacity, because the claimant's subjective statements may tell of greater limitations than can medical evidence alone. Social Security Rule (SSR) 96-7p (1996); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001). For this reason, the ALJ may not reject the claimant's statements regarding his limitations merely because they are not supported by objective evidence. *Fair v. Bowen*, 885 F.2d 597, 602 (9th Cir.1989). If there is no affirmative evidence that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony regarding the severity of symptoms. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001).

The record contains affirmative evidence that claimant was malingering, and therefore, the ALJ did not need "clear and convincing" reasons to reject claimant's testimony about his physical condition. *See Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995); *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir.1998) ("Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing.") Here, the ALJ stated the reasons why the claimant was a malinger:

> "Since he has not had any medical reasons for not working the past 15 years, no[r] any indication that he has sought work, it appears that he simply does not want to work, preferring to spend his day at the bus station listening to his walkman (radio)." (AR 29.)

Indeed, the claimant had previously testified that he never had a job. While the ALJ did not specifically use the term "malingerer," the ALJ nonetheless so concluded.

To justify rejecting claimant's testimony, the ALJ properly furnished legitimate reasons supported by substantial evidence. First, the ALJ noted claimant falsely told Dr. Martin that he had quit drinking three years before, but that emergency room records demonstrated that he had been drinking. (AR 22, 179.) The ALJ noted that claimant did not seek treatment for his alleged back impairment until the month he requested reconsideration of his initial supplemental income application. (AR 24.) The ALJ considered that claimant claimed he was illiterate, but found that this was inconsistent with his eleventh grade education and with his taking the psychological testing administered by Dr. Kirkland, who did not observe illiteracy. (AR 24.) The ALJ noted that he had been incarcerated four times for petty theft and forgery. (AR 23.) The ALJ also considered claimant's inconsistency between claimant's allegation of disabling carpal tunnel syndrome and his utter failure to mention the symptoms to Dr.

Roberson during the consultative examination. (AR 28.) The ALJ also considered claimant's treatment, use of medication and his daily activities. (AR 29.) Thus, the ALJ stated reasons for rejecting the testimony of claimant and while not required to be so, these reasons are additionally clear and convincing.

**CONCLUSION**

The Court RECOMMENDS as follows:

The Court finds no error in the ALJ's analysis. As such, the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment as a matter law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security and against claimant Bobby Graves.

These findings and recommendations are submitted to the United States District Judge Anthony W. Ishii to whom this matter is assigned pursuant to 28 U.S.C. § 636(b)(l) and this Court's Local Rule 72-304. Within 10 days of the date of service of these findings and recommendations, plaintiff may file written objections with the Court and serve a copy on all parties and the Magistrate Judge in compliance with this Court's Local Rule 72-304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   January 9, 2006**          **/s/ Lawrence J. O'Neill**
b9ed48                                                UNITED STATES MAGISTRATE JUDGE